H. A. MILLER v. MAURICE W. McCARTHY.[1]

December 18, 1936.

No. 31,090.

[1]Reported in 270 N. W. 559.

498

Robert J. McDonald, William H. DeParcq, Frank E. Dougherty, and John W. Flynn, for appellant.

C. L. Erickson and Leo J. Seifert, for respondent.

HOLT, JUSTICE.

The appeal is from an order denying appellant's motion for a new trial after a verdict for respondent.

Plaintiff, administrator of the estate of his son Marvin J. A. Miller, brought this action to recover upon a $5,000 life insurance policy issued to Marvin, conditioned to pay said sum to his wife, Florence V., upon proof of his death. The company which issued the policy answered admitting its liability, asked leave to pay the amount into court and have the representative of Florence V. made a party defendant, and the company dismissed out of court. This was ordered as the company requested. Issue was joined by the representative of each estate. It appears conclusively that both insured and the beneficiary perished in a common catastrophe or disaster when the Ford two-door sedan in which they, about midnight on May 29, 1935, were riding north from Bovey, failing to turn to the left to enter the bridge which there spans Prairie River, kept straight on over the easterly abutment and turned a somersault, landing top down in some three feet of water. The next morning Marvin was found crouching in the back part, his hair showing above the water. Florence was found some 500 feet west of the car, the river there flowing westerly, held by her clothing being caught on a snag, her face down and knees flexed, being so held that her head was upstream. When found *rigor mortis* had set in as to both bodies. The only issue in the lawsuit was whether Florence survived Marvin. Appellant conceded in the oral argument that unless some of the errors assigned call for a new trial the verdict cannot be disturbed by this court.

Many of the assignments of error challenge the rulings and charge of the trial court that the burden of proof was on the administrator of Florence's estate to show that she survived Marvin. By demurring to the complaint, by objecting to the introduction of any evidence thereunder, and by taking exception to the instruction that the administrator of Florence's estate in order to recover must prove that she survived the insured, the vital point as to the burden of proof was raised at the trial and is presented on the appeal. There is no contention but that under the common law

there is no presumption of survivorship or of simultaneous death where two or more persons perish in a common disaster. Hence, as between the heirs and representatives of a husband and wife who have lost their lives in one and the same calamity, the burden of proof in an action like the present is of vital importance. In the instant case the insurance company admitted liability, paid the amount of the policy, and interpleaded the administrator of the estate of Florence, the beneficiary. That representative came in and asserted a right to the fund; but Florence, the beneficiary, being dead, he is not entitled thereto unless she died after the insured or survived him. The policy is payable to Florence, not to Florence or the representative of her estate. She had no vested interest in the policy so long as the insured lived, for he had reserved the right to change the beneficiary at any time. In a certain sense she had an interest therein, but it was contingent upon her surviving him. These clauses in the policy are inconsistent with the proposition that Florence had a vested interest in the policy:

"The insured may from time to time change the beneficiary, unless otherwise provided by indorsement on this Policy or unless there be an existing assignment of this Policy. Every change of beneficiary must be made by written notice to the Company at its Home Office accompanied by the Policy for indorsement of the change thereon by the Company, and unless so indorsed the change shall not take effect. After such indorsement the change will relate back to and take effect as of the date the Insured signed said written notice of change whether the Insured be living at the time of such indorsement or not, but without prejudice to the Company on account of any payment made by it before receipt of such written notice at its Home Office. In the event of the death of any beneficiary before the Insured the interest of such beneficiary shall vest in the Insured, unless otherwise provided herein. * * * The Insured, during his lifetime, and without the consent of the beneficiary, may receive every benefit, exercise every right and enjoy every privilege conferred upon the Insured by this Policy, unless otherwise provided by indorsement hereon."

There were no indorsements on the policy nor any assignment thereof. So we conclude that there was no vested right of the beneficiary in this policy that would pass to her heirs or representatives upon the perishing of herself and the insured simultaneously in the same disaster. Her representative was interpleaded and substituted as defendant in place of the insurer, which acknowledged liability on the policy and paid the amount thereof into court. The representative set up claim to the fund and ordinarily should prove the claim, and that necessarily would be that she, as beneficiary, survived the insured, her husband. There are decisions to the contrary. Watkins v. Home L. & A. Ins. Co. 137 Ark. 207, 208 S. W. 587, 5 A. L. R. 791; Roberts v. Hardin, 179 Ga. 114, 175 S. E. 362; United States Cas. Co. v. Kacer, 169 Mo. 301, 69 S. W. 370, 58 L. R. A. 436, 92 A. S. R. 641. The last cited case turned on the point that the beneficiary had a vested interest in the policy because the insured had not the right to change beneficiaries. In the Roberts case the dissenting opinion appears more persuasive than that of the majority opinion. The weight of authority is, we think, that where the interest of the beneficiary in the fund payable upon the insured's death is contingent upon surviving him and they both perished in a common disaster the burden is on the one claiming through the right of the beneficiary that the latter survived the insured. Such is the conclusion stated in 2 Couch, Cyclopedia of Insurance Law, § 341. Much the same reason exists for placing the burden of proof upon the one claiming through a beneficiary in a will where the testator and the beneficiary perish in the same calamity. Young Women's Christian Home v. French, 187 U. S. 401, 23 S. Ct. 184, 47 L. ed. 233; Cedergren v. Massachusetts B & I. Co. (C. C. A.) 292 F. 5; Middeke v. Balder, 198 Ill. 590, 64 N. E. 1002, 59 L. R. A. 653, 92 A. S. R. 284; Carpenter v. Severin, 201 Iowa, 969, 204 N. W. 448, 43 A. L. R. 1340; Fuller v. Linzee, 135 Mass. 468; Fleming v. Grimes, 142 Miss. 522, 107 So. 420, 45 A. L. R. 618; McGowin v. Menken, 223 N. Y. 509, 119 N. E. 877, 5 A. L. R. 794; Dunn v. New Amsterdam Cas. Co. 141 App. Div. 478, 126 N. Y. S. 229; In re Valverde's Estate, 148 Misc. 49, 265 N. Y. S. 484, affirmed without opinion 242 App. Div. 653, 273 N. Y. S. 371, and

in 266 N. Y. 620, 195 N. E. 229; Paden v. Briscoe, 81 Tex. 563, 17 S. W. 42.

Several assignments of error assail the rulings of the court in striking out from appellant's pleading allegations in respect to the five-year old child of Florence, Barbara Ann Vranizan, refusing to allow an amendment to assert her claim to the insurance fund, and sustaining objections to offers of proof of intentions of Marvin with regard to Barbara, for whom he cherished affection, not only to provide her with a home but that the insurance was also taken out for Barbara's benefit; the theory being that the terms of the policy, while strictly measuring the obligations of the insurer, should not measure the rights as between the claimants of the fund payable upon the death of the insured, but that the policy should rather be construed as a will so as to effectuate the intention of the insured. But no matter how this policy is construed, there is no room for claiming that there was any other beneficiary to whom the insurance should go than the wife, Florence, and in case she did not survive him, "the interest of such beneficiary shall vest in the Insured." This precludes any claim of Barbara unless it be proved that her mother became entitled to the fund, and the sole issue in this case is the right of the mother to the same. We think the rulings of the court herein were right.

No reversible error can be asserted in excluding the wrist watch taken off Florence when her body was brought out of the river. Without objection witnesses who first saw it testified that it had stopped at 12:15. This was not disputed. The watch itself would have shown no more to the jury. Moreover, the time the watch stopped would not in any manner tend to prove that Florence survived Marvin.

The undertaker and others were permitted to testify that water bubbled from the mouth of Marvin and that no water came from the mouth of Florence. So far there is no valid objection to the testimony. But the undertaker, who had prepared for burial eight or ten bodies of persons who had drowned, was permitted to state that the water thus bubbling from the mouth came from the lungs and that there was no water in the lungs when none bubbled from

the mouth of a corpse. A physician was also permitted to give his opinion that a person who had water in his lungs died from drowning, and that one submerged in water when found but without water in the lungs died instantly from some other cause than drowning. Whether foundation has been sufficiently laid for the reception of the opinion of an expert is largely within the discretion of the trial court, and we are unable to see any abuse of this discretion in respect to the evidence here assailed. The court in the charge made this statement based on the evidence above mentioned. "Marvin Miller had water in his body, presumably the lungs. Florence Miller had no water in her body or lungs." It perhaps would have been better if the word "lungs" had not been used. But in view of all the evidence it cannot be held that the statement warrants a new trial. The court left it fairly for the jury to determine whether the evidence proved that Florence survived Marvin.

It is also assigned as error that the court refused to admit in evidence the certificate filed by the undertaker in compliance with 1 Mason Minn. St. 1927, § 5357. The court was right. The undertaker is required to attach a medical certificate subscribed by the coroner when there is no attending physician. Here the deputy coroner who signed the medical certificate was not a physician and had made no examination of the bodies except as he saw them taken from the river. His opinion as to the cause of death was of no probative force on the single issue here involved of Florence surviving Marvin. The deputy coroner was not a witness, and the statute does not make this medical certificate procured and filed by the undertaker *prima facie* evidence of any other matters than facts and makes no reference to inferences and conclusions drawn by the coroner. 1 Mason Minn. St. 1927, § 5366; Backstrom v. New York L. Ins. Co. 183 Minn. 384, 236 N. W. 708.

The last assignment of error which merits some consideration is the refusal to order an autopsy of the bodies. We shall not stop to consider whether or not the court possessed the power to order an autopsy in a suit between private parties where no claim of fraud or deceit enters the right to the money each seeks to recover. Here

504

no application for an autopsy was made until a few days before the day set for the trial of the case, which had been at issue for more than six months. Even where parties to an insurance contract have stipulated for an autopsy, the demand therefor must be made seasonably, and, if not so made, the court's refusal to order it cannot be held an abuse of judicial discretion. Johnson v. Bankers M. C. Ins. Co. 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154. Under the circumstances here disclosed, we think the court did not err.

The order is affirmed.

